Good morning. Good morning. May it please the Court, my name is Sean O'Shea. I represent John Doe, the non-party appellant bringing this appeal. Your Honors, I'd like to reserve three minutes of my time for rebuttal. Okay, keep an eye on the clock and I'll try and help you, Mr. O'Shea. Thank you, Your Honor. Your Honor, civil plaintiffs, and these are civil plaintiffs, have subpoenaed tapes which, according to the Department of Justice's factual representations, indisputably were part of a grand jury investigation which was being assisted by the Department of Justice. Well, do we know that? I mean, do we know when the tapes were made vis-a-vis the convening of the grand jury to actually hear any evidence or to issue any grand jury subpoenas? What we know, Your Honor, is that the Department of Justice filed a motion to intervene to stay a discovery of that grand jury investigation, and in that motion to intervene, the Department of Justice said that its investigation had been ongoing longer than the civil plaintiffs had brought their lawsuits. That's not the question. The question is, what is the timing of the initiation of the FBI investigation versus the first time that a federal grand jury actually was aware of the existence of the investigation? I'm getting there, Your Honor, giving the best information we have. And what's the answer to that question? Sometime prior to October of 2009, when the civil lawsuits were filed, sometime prior to that, but unknown to us. We don't have line of sight. We don't know when the FBI opened a file as a result of whatever triggered the initiation of the investigation. We don't know when . . . We do know when the conversations were recorded. We have those dates, right? We have Mr. Lim's representations about when . . . I thought the subpoena was specific with regard to date and time. Am I wrong? The subpoena, Your Honor, actually, and this is at excerpts of Record 144, calls for any recording of conversation between or among defendants relating to the Department of Justice's investigation. And it does, prior to that . . . Well, I'm looking at . . . . . . list . . . I'm looking at 466 and 467, listing four specific conversations by date and time. And then there are, within that, four conversations. We don't know that that's the universe, Your Honor. I understand that. But let me just ask my question again. So if the recording occurred on April 15 of 2009 at approximately 6 p.m., we don't know whether that was before or after the grand jury had heard anything about this. We don't. But that doesn't govern our inquiry. Well, if that's the case, then how could it possibly be Rule 16 material as matters occurring before the grand jury? Because we don't know, just because the recordings were done prior, doesn't mean that the effect of disclosure of recordings wouldn't show the scope of the grand jury investigation, who was under investigation. Mr. O'Shea, the law does not give you a complete immunity bath from the production of any tangible piece of evidence, simply because at some later point in time, it was discussed in a federal grand jury. That seems to be the logical conclusion of the argument that you're pressing before. Your Honor, the logical conclusion of my argument is that this Court, the Court below, and Magistrate Judge Spiro are duty-bound to follow the law of this circuit, as stated in Dynavac and Benjamin. Dynavac doesn't say that we forbid the whole world from ever learning about some piece of evidence that the FBI uncovered in an investigation. What we do know is that Dynavac teaches that if the effect of disclosure— It didn't adopt that, Your Honor. It didn't adopt that. It talked about it, but it didn't adopt it. It talked about that other circuits had done that, but did not adopt that. Isn't that correct? Well, both—but Dynavac is not alone, Your Honor. Dynavac and Benjamin both adopt and discuss that standard. And, Your Honor, if I may, even if, Your Honor, Judge Coleman, if you're correct, even if that's the case, we don't know, we're guessing around, even as to Your Honor's speculation about—because we don't know, because no hearings— Well, I'm not speculating. I've got a factual finding by the district court that this is not Rule 6e material, and I want to know what you have to convince me that that's a clearly erroneous finding of fact. Well, because under Dynavac and under Benjamin, the courts and even the IPP plaintiffs admit that this standard is under Dynavac and Benjamin, that the court needs to conduct an inquiry, an in-camera inquiry, an evidentiary hearing, which the cases that they cite all have conducted that did turn over material. Here what you have is the district court saying, well, we have nothing in front of us that says this is 6e, but all we had in front of us, Your Honor, in front of Judge Kagan, was a motion to intervene in two documents by Department of Justice. One was the motion to intervene. The second was a July 24, 2014, letter. That letter was written by the acting head of the Antitrust Division. That letter was after advocacy was received by both sides, by myself, by lawyers for TSSTK, my client's employer, and by all of the plaintiffs in front of a woman named Belinda Barnett at Department of Justice. It then went through layers of hierarchy, and the Department of Justice issued a letter declining to turn over material pursuant to the subpoena. And in that letter it said that this material, if disclosed, will reveal persons who are under investigation by the grand jury. So the question, the test here, Your Honor, is not one of when temporally the tape was made, but what rather the tape would show. For example, if the tape— Well, let me ask you a different question. Let's suppose that the FBI is investigating a bank robbery, and they seize the demand note that was delivered by the bank robber to the teller. And then later a grand jury is convened to indict the bank robber, and an FBI agent testifies about the demand note. Would your position be that the demand note is not disclosable because it's 6E material? Not necessarily. My—the position would be, and I think what Dynavac and Benjamin and the other circuits that follow the effect test would be— Well, you keep saying that, but you're not listening to what Judge Smith was asking you. Give us the pin site in Dynavac where we adopt the effect test. Because I read that case, and I don't see any language in our panel opinion that says that. Well, Your Honor, I don't have the case right in front of me to give you that pin site. I can provide it. I don't think it exists, Mr. O'Shea. Well— And if you think you can point us to the page where we adopt that test, I'd love to see it, because I read it very carefully, and the same is with regard to Benjamin. Your Honor, if Your Honor take—go back to your hypothetical, that note. If that note—if later that bank robber, that alleged bank robber, was investigated, and if turning over that note, he had signed his name, for example, to it— Right. That was my hypothetical. Right. That's how we know who the bank robber was. So we know who the bank robber, alleged bank robber, is. Right. But that bank robber is cleared of that charge. Right. The grand jury declines to return an indictment. Sure. The Department of Justice declines to bring charges. And then some civil plaintiff comes along and says, I want that material that was in front of the grand jury. If the effect of that would be to disclose who the grand jury was investigating—and again, not temporarily. I think the case is— So your argument really is that it becomes immunized from production to the rest of the world because it was somehow discussed, examined, considered by some subsequent grand jury. Not necessarily. Your Honor, I think if you look at—for example, let's go back to Dynavac. And those records have an independent pre-existing existence, if you will. Right. Business records, for example. ABC Corporation gets subpoenaed for its accounting records to the grand jury. And the mere fact that those records were in front of the grand jury, considered by the grand jury, discussed, testimony taken about them, doesn't mean that those are investigated and exonerated by that grand jury. What I think the courts teach us is you have to do an in-camera review of the material and you have to conduct an evidentiary hearing, as the Third Circuit did in the Catania case. Counsel, that's a very broad statement, as my colleague has suggested. I mean, it appears that what you're saying is that—you cited, for example, business records, but there are legions of data that might ultimately be used in front of a grand jury that were developed independently, having nothing whatsoever to do with the criminal investigation. And if I understand you correctly, you're saying that in order to determine whether they are subject to disclosure under 6E, you've got to have an in-camera hearing before the trial court to determine whether there's some potential effect on disclosing somebody's name. Is that really your position? Is it that broad? That is not only my position, Your Honor. I believe it's the law. And I would say this. I would say this. I would say this. That the Department of Justice— You know, you might want to listen to what the court is saying before you start talking, Counsel. Just a suggestion. Okay. Neither Judge Tallman or I are finding in Dynavac nor Benjamin what you're saying. So let's just talk about where we should go from there. Our circuit has simply not adopted the effect test at this point. But I gather you're saying that you think we should adopt it. Is that correct? I am, Your Honor, if— And why? If, Your Honor, for this reason. My client was investigated and ultimately exonerated by the grand jury. There are tapes made, which the Department of Justice has said— Well, exonerated or not indicted. I'm not sure. I mean, that's like saying if somebody's not guilty of a charge that he had no involvement in the crime. All it means is the government didn't convince the jury by proof beyond a reasonable doubt that he did. And that same standard applies to everyone in this court, Your Honor. Right. Respectfully. We're all innocent until proven guilty. But that doesn't mean he was exonerated. It means that he wasn't convicted. In this case, apparently the grand jury decided, or the Department of Justice decided in presenting whatever they presented, that there was not probable cause to show that he was engaged in criminal price fixing. The grand jury came back without returning an indictment. And the Department of Justice subsequently said that revelation of these tapes will reveal the identity of someone who was investigated. Well, that's not what they said. What they said is we're invoking 6E to the extent that it does not involve the production of 6E material. And then I've got a finding by the district court that says this is not 6E material. So I don't see the inconsistency in the position that you're ascribing to the United States. Well, at excerpt of Record 161, Your Honor, the Department of Justice said—and this is Renata Hess, the acting assistant attorney general in charge of antitrust—said, quote, I am particularly reluctant to authorize the disclosure of the tapes at issue here because those tapes have never been played in public and contain information about persons who were under investigation and the details about our investigation that have not been made public. But even if that's true, 6E also contemplates a showing of particularized need as a justification to overcome all those interests, does it not? Well, first you have to get to the determination of whether it is 6E, and then— Well, assuming that it is. I mean, we've actually approved the turning over of actual transcripts of witness testimony, which is clearly a matter occurring before the grand jury— Well, Your Honor— —if a showing of particularized need has been made. It's a balance. 6E says that secrecy is not absolute. Your Honor is correct. You agree. Let me ask you a question. It looks like while this appeal has been pending, down in the district court there had been activity or leading up to this appeal where people were negotiating a protective order. Is that correct? That is correct, Your Honor. Including you on behalf of your client. Is that correct? I was not negotiating, Your Honor, but I was present at most of those—I believe at most of those discussions. Right. And there were terms that people—it looks like there was agreement that if, depending on how the Ninth Circuit ruled, then this would be allowed, but this wouldn't be allowed. Is that correct? Generally, yes. Okay. And so it looks like for us to have jurisdiction based on the Pearlman case, that means that a non-party has no other means of judicial review. I'm just wondering whether or not maybe we even have jurisdiction if there's another means of judicial review, which has been taking place with respect to the protective order. And ultimately, why isn't a protective order sufficient? Well, one, we don't have the—I don't have the access to—I don't have the prevention of turning it over unless I have Pearlman jurisdiction, Your Honor, because I don't have the ability to stop Department of Justice, and that gives me Pearlman jurisdiction. But no case law—you can't find any case that says that 6E is modified if an appropriate protective order is entered. At the end of the day, that protective order will not protect my client. But you're assuming 6E—well, that 6E applies here. Your Honor, my time is up, and I want to— All right. Well, let's hear from the other side. I'll give you some time on rebuttal. Thank you. Good morning, Your Honor. Jeff Friedman on behalf of the appellees. First, I'd like to directly answer the Court's question with respect to the record and the timing of the grand jury relative to the tapes. And then I'd like you to address Judge Perghia's question, which also concerns me with regard to whether we even have jurisdiction based on what's happened in the district court with the entry of the May 1 protective order. Yes, Your Honor. So in the record at Supplemental Excerpt of Record 195, that is an allegation in the complaint that has the issuance of grand jury subpoenas for the first time occurring in June of 2009. So, again, Your Honor, the overview is we don't know exactly— Well, that suggests to me that the grand jury hadn't heard anything about this matter in April of 2009 when the tapes were recorded. Correct, Your Honor. And we have testimony and record evidence from the cooperator that the FBI and the cooperator's company and the cooperator itself started cooperating with the FBI in January of 2009. So I wanted to answer that Court's question. Should there be a hearing to determine? So, Your Honor— Because your colleague sitting across from me points to cases where they did apparently have a hearing. So, Your Honor, there is no litmus test that says you must have a hearing. I think counsel said we had conceded that, that no way had we conceded that. There are instances, Your Honor, obviously, where, unlike here, the Department of Justice has taken the position that the tapes or evidence should not be disclosed out of concern for an ongoing criminal investigation. And in that context where the Department of Justice, who is the entity that actually knows what is going on and what evidence is or is not being presented to the grand jury, has made the argument, and in some of those instances the Court has undertaken an in-camera review in order to determine whether the sensitivity articulated by the Department of Justice opposed to parties that have no insight into actually what is or is not being presented to the grand jury makes the argument. But if that information was before the district court, isn't that enough to support a finding that they're not 6E material? If what information, Your Honor, was before the district court? The temporal answer that you just gave me. Absolutely. Absolutely, Your Honor. What would we hold a hearing on? To confirm that the recordings were, in fact, made in April and the first grand jury subpoena didn't issue until June? So, Your Honor, I agree with you. There need not be a hearing to confirm that. Moreover, the purpose of the hearing, if anything, would be an invasion into attempting to find out the inner workings of and timing of the grand jury, which is what 6E is essentially preventing us from weighing in on, which at this point, with the record, Your Honors, is clear. We don't have information as to what was being deliberated on. But the Court is correct. The only inferences right now that exist are in the favor of the fact that it's not 6E material. And I would say, Your Honor, the Court was absolutely correct, and then I will get to the question about jurisdiction. What's the government's current position right now? So the government, and this was where I was, exactly where I was going, Your Honor. The government took the position that they, we met with the government, with the cooperators, companies counsel, in the negotiation over disclosure, and the company said, we will not discuss 6E material. And then we went on to have discussions about these tapes. So the only representation that was with concrete specificity as related to these tapes was the government saying, we won't discuss 6E material. The letter, this conversation happened after the letter from Ms. Barnett, and the Court's recollection is precisely correct that the letter said, to the extent. And so there was never an assertion concluding that these are 6E materials. It was a broad, protective letter that said, to the extent we, the Department of Justice, determines that the materials are 6E, we have objection. We then had a meeting to say, and the DOJ represented, we won't discuss 6E material. With respect to the Court's question, if I understand it in terms of jurisdiction, the question in terms, clearly that's before the Court at this point in time is whether or not the materials are 6E. We believe the Court clearly. What happened to the recording? The protective order got entered. Have the recordings been produced under the terms of the protective order? The answer is all tape recordings have been produced to us, except the tape recordings with Mr. O'Shea's client on them. And these, are these the recordings that I was referring to in 466? I believe so, Your Honor. Specifically listed by date and time in April. Well, yes, Your Honor, except for we don't know actually whether some of those included Mr. O'Shea's client. We had an agreement in the district court with the Department of Justice that the other defendants in the case, Your Honors, their, some of their employees were on the tapes without Mr. O'Shea's client. All of those have been produced to us. It was only Mr. O'Shea's client's tape recordings that were not produced pending appeal. Maybe I misread that, but wasn't there some discussion that if required to produce, they would redact the name, do all sorts of redactions with respect to John Doe? So, Your Honor, not with respect to if ultimately produced. We, they took the position that they wanted to have redactions of the names if ultimately produced to us. And we said you'd essentially make the tapes unusable if you had the entities and the individual's names. You could never authenticate them. You could never introduce them. You'd never get admissibility if you had no identity of who was on the tapes. But, Your Honor, what was entered was a protective order that the tapes, if the court finds that they are not 60 material, which the court clearly has jurisdiction to find and we think it's the right outcome, the protective order will cover the tapes that have been withheld. Those tapes will not be disclosed publicly. They will be disclosed to the parties, obviously, in the litigation as happens every day with a protective order in place. And so the concerns over the identity of the individual on the tapes will not be publicly disclosed under the terms of protective order. So, bottom line, in answer to Judge Munguia's question, you believe we have jurisdiction because while there's been a turnover of the tapes with respect to everyone except this gentleman's client, they haven't been turned over. So that's a real issue. It's a real controversy. We can decide. Correct, Your Honor. Okay. So the only other point, Your Honor, that I would highlight here is that here we have a clear factual record where you have never an admission or statement or information the tapes were presented to the grand jury. As the court zeroed in on very early on, there's inferences in the record that show us that the tape recordings occurred prior to the grand jury ever receiving any evidence. We've never, ever even, Mr. O'Shea makes arguments about whether there was exoneration or the court correctly, I think, framed it, a determination of no bill was presented, which is different. But we don't even know if the Department of Justice presented for ultimately the question of indictment Mr. O'Shea's client. So fundamentally at the end of the day — Well, they could have no billed him, for all we know. Or they could have never presented, for all we know. Absolutely, Your Honor. Well, the outcome of the criminal trial or the criminal investigation was, what, the payment of some fine by corporations to the government? So with respect to one defendant and several of that defendant's employees, there were guilty pleas, jail time for the employees, as well as fines for one of the defendants. And that was all pursuant to negotiation with the antitrust division? Correct, Your Honor. And what we also have, and this, if anything, this is a key fact that further militates in favor of disclosure, is that here in this case, Your Honors, we have the defendants representing to the district court judge that the grand jury investigation was closed. And so we waited. We didn't seek a subpoena while there was an ongoing criminal investigation. We thought we were being prudent and measured by waiting until the grand jury investigation was closed. And when it was closed, we then issued the subpoena. All cases — Let me ask you this, counsel. If you agree that neither Dynevac nor Benjamin adopts the effect test, if you were in our position, what would your preferred outcome be in terms of how 6E is construed in a situation like the one before the court? Your Honor, our preferred outcome would be a finding that said if there is — testimony, that is, or something that reveals the specific processes, deliberations that are going on in front of the grand jury, that it is presumptively not 6E material. But I think there should be some latitude for the Department of Justice, of course, to come in and say there are certain timing and sensitivity issues in terms of — There are other issues, too. I mean, the whole — there are lots of reasons articulated in the TUI regulations, for example, disclosing method and means of investigation that might also come into play. And I'm a little bit reluctant to go down this path where I don't have the government in front of me arguing what those factors are. I'm not sure how we write an opinion that doesn't inadvertently undermine the TUI regulation. Well, Your Honor, and that's — I actually, even though, you know, I was formerly with the government, I'm trying to be sensitive. Rather than coming and saying the court should take a bright-line rule and says as long as it's not core 6E, it gets disclosed. I — Well, let me ask you a harder question. Sure. And the case was not really litigated on this theory. As I understand the analysis, if we determine that this is not rule 6E material, we're done. We go home. Yes. But if we decide that it arguably might be rule 6E material, then we have to go to whether or not there's been a showing of particularized need. Yes, Your Honor. And I realize that you didn't really make that record in front of the district court. But if we were to remand it for a hearing, what would your position be with regard to particularized need? Well, Your Honor, I would say that we did make the record. The court didn't make — But you rule on it. He didn't rule on it. So — Right. So we don't have a ruling on that — We don't have a ruling. — alternative argument. But what I'd say is we have a record on it, and the court could affirm on that. And that is, we did exactly what Douglas Oil, in a footnote, said was the quintessential particularized need, which in Douglas Oil, ultimately, those were grand jury transcripts that were ordered disclosed. And that was, in effect, Your Honor, using the information, transcripts there, grand jury transcripts here, tape recordings, using them for cross-examination, impeachment, refreshing recollection of a witness who may in fact testify, which clearly we have here. We — Because you've deposed the witnesses, right? We — The participants to the conversation. We have. His client — Mr. O'Shea's client took the Fifth, and we've now been told he is recanting. And so as a result — Recanting his invocation of the Fifth. Yes, Your Honor. So are you going to renote his deposition? Yes. But you want the tapes first. Precisely. Okay. I think I understand your position. Okay, Your Honor. With that, I have no further argument. Let's — Can I just ask you one more thing? Yes, Your Honor. In construing Rule 6e and putting to the side for a moment my colleague's very legitimate concerns about ruling on something where the government is not participating directly and giving us its views, is there within the language of 6e some kind of a presumption that something is not included in 6e if it's not produced, directed, and acted before the grand jury itself? It's not, Your Honor. It says grand jury materials, and it's left for the court to interpret. Okay. Great. If there are no further questions, Your Honor, I'd left some time for my colleague — Not much, but I'll give him a little bit. Thank you. All right. Okay. Thank you, Your Honors. My name is Rod Gansky. I represent Dell, and I'm arguing on behalf of all of the individual opt-out plaintiffs also called the DAPs. These are Dell, HP, Acer, and others. And I'd note that Dell and HP are specifically named victims of this conspiracy and the guilty plea that was referenced, the corporate guilty plea. What I wanted to speak to is that Dell and HP are the biggest purchasers of this product during the time period. We understand there's a lot of money involved. Sure. We get that. Okay? I understand why we're fighting over this. Right. And that's all I wanted to emphasize was the need that the DAPs have. You know, this gentleman, Mr. Doe, was the account rep during the time of the tapes for HP. He was speaking to another account rep for HP. HP requires these tapes. Dell requires these tapes. They are the evidence of what the conspirators were saying to each other. The other two points I wanted to make were that Dell and HP know who Mr. Doe is. We have his name in the complaint. Well, we understand all that, and I guess where I was really going with Mr. Friedman was a question as to whether or not, if you're now able to depose all of the participants to the conversation, why do you really need these recordings other than for purposes of impeachment? Well, and we have it in the briefs case law that, you know, nothing is a substitute. Memory is not a substitute for the actual recorded times. This is 2009, you know, six years ago. But at this point, the state of the record is that the witness invoked the Fifth Amendment, and therefore, we don't know whether his answer to the question is going to be, gosh, I can't remember. It was April of 2009, and you're asking me about a telephone conversation. Well, we know from the record that Mr. Doe has professed his innocence at a minimum, regardless of his memory. We think that using his own words to impeach and depose him is important. Is there any question in your mind that were there no Rule 6E that you would be entitled to a copy of these tape recordings? Absolutely not. If 6E doesn't apply, there's no question. Okay. Thank you, Your Honors. Okay. Your Honor, just very briefly. I'll give you a couple of minutes. Thank you, Your Honor. We're guessing around this morning, actually, and the Court's asking, directing good questions to the parties about whether these are 6E materials based upon the temporal, and we don't even know when the grand jury started. We don't know. And that points up the need for the hearing. And Your Honors are asking questions about the DOJ's position, and this Court should know that the DOJ was present at every court hearing, and the only thing they said was that the programmatic interest of the amnesty program was very important to them. No questions were directed to the Department of Justice. No, my question really to Mr. Friedman had more to do with how we would craft the opinion that Judge Smith was asking about, because we need to be careful when we are wading into an area like this, because there are a lot of competing interests, and this case is a paradigm example of it, that judges have to think about when we're trying to announce the rule. Because contrary to your reading of those two cases, I don't think we've adopted the effects test yet in this circuit, and this case presents us with the opportunity to do that if that's what my colleagues and I decide that we're going to do. But then the question becomes, how do you write the opinion appropriately, narrowly, and effectively to guide the district judges and counsel in handling these kinds of issues? And I think Your Honor points up the need for a remand and a need for a fuller record. And then, once you get to the 6E analysis, if they're determined to be 6E, which I believe they are, given the Department of Justice's position before they changed their position back in July, then— You know, Mr. O'Shea, I don't think they've changed their position. I think they crafted a very carefully worded letter that said, we'll give you some information, but to the extent that it breaches 6E, we're not going to give you 6E material. Assuming, arguendo, that Your Honor is correct, you still don't know the answer to the question is whether this material is 6E in fact. We're all guessing around about here. The party that knows the answers is Department of Justice. But I guess conceptually, how is it that a tape recording made outside the presence of the grand jury in the course of a criminal price-fixing investigation somehow constitutes matters occurring before the grand jury? That's where I'm having an analytical difficulty with Your Honor. Because, Your Honor, the grand jury material has never been confined to just what's in the four corners of that room. Well, let me ask you another hypothetical. Suppose that we were talking about wiretap recordings pursuant to Title III, where an affidavit of probable cause was presented to a district judge rather than to a grand jury. Would you be willing to allow the government to listen in on HP's and TSSK's phones so that the agents could listen in without anyone on the phone knowing the government was listening? Would your position be the same, that this is now Rule 6E material? It might be. And for the following reason. I think if you look at the high fructose case and packaged ice cases, those cases talk about asymmetrical access. One side has access to materials post-indictment, post-trial. They've been guilty pleas. If that is the case, and I believe those cases, and I don't know for sure from the face of the case, but they appear to have been at least in part Title III-type recordings. So that may be the case. But, again, I think, Your Honor, and I understand your position about what the Ninth Circuit has said to date, but I think the proper analysis for this Court to enter into is one of the effects tests. And I just want to get to one other point. And I know I've gone on here. But if this is the – if this Court sends it down for a fuller record, and if it's found to be 6E, then you have to go to the, as the Court's been talking about, the particularized need test. But it's actually a compelling particularized need. Douglas Oil at 441.224, note 14, says that the – we're all using the shorthand particularized need, but it's compelling particularized need. And you have to show that an injustice will be done if it's not turned over. But would you concede that if a witness denies that such a conversation ever occurred or professes no memory of the content of the conversation because it occurred in 2009 and he's now testifying in 2015, that would show a compelling need? It does not under the case law, Your Honor. And what you – these are the – So how would we ever get access to the evidence when we have a verbatim transcript of the conversation? Maybe, like many times what 6E is meant to do, you don't get access to the material. If you cannot show a – We're back to the immunity bath, and the law cannot be that. The law cannot be as if you urge us to declare it. Pardon me, Your Honor. But an immunity bath is suggestive of something with no analysis, no oversight by courts. What I'm suggesting and what I think the courts teach us is there has to be some sort of analysis. Is this 6E? Then you go to a compelling particularized need test. And will it work an essential unfairness of what the courts call a grave injustice if it's not turned over? The need to have the best evidence, the need to desire to cross-examine. Conversations go to the heart of a price-fixing claim. Because of the fact that the conversation occurred between two account representatives who were actually fixing prices, why wouldn't that meet a manifest injustice standard if the state of the record is the witnesses profess no recollection of ever having had – Well, that's because 6E under Douglas Oil, Supreme Court precedent, and other cases says that the exonerated person is entitled to the protection. But Douglas Oil authorized the production of verbatim grand jury testimony by the witnesses in a price-fixing need test. Notwithstanding that, Judge, that's the test. And my client was not – The Supreme Court found the test met in that case, that there was a particularized need show. My client was not indicted. The need to cross-examine does not equate to a grave injustice. And the other thing is, Your Honor – I think we have your position, and I've let you run over. You have, but one other thing. They have J.C. Lim's testimony. One last sentence. Go ahead. They have J.C. Lim's testimony, Your Honor, so they're not bereft. Thank you. All right. Thank you, Bo. The case just argued has been a very interesting case, and we'll puzzle our way through it and give you an answer as soon as we can.
judges: Tallman, Smith, Murguia